IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEWCAL INDUSTRIES, INC., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>IKON OFFICE SOLUTIONS, INC., et al.,<br><br>    Defendants. | No. C 04-2776 FMS<br><br>**ORDER ON IKON OFFICE SOLUTIONS, INC.'S AND GENERAL ELECTRIC CAPITAL CORPORATION'S MOTIONS TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** |

INTRODUCTION

Before the Court are two motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) submitted by Defendants IKON Office Solutions, Inc. ("IKON") and General Electric Capital Corp. ("GE Capital" or "GE"). IKON and GE Capital argue that all claims asserted by Plaintiff Newcal et al. ("Newcal") in its First Amended Complaint should be dismissed for failure to state a claim. Having considered the pleadings and papers filed by both sides, the Court GRANTS defendants' motions to dismiss with prejudice.

BACKGROUND

The factual background of this case is contained in the Court's December 23, 2004 Order regarding defendants' previous motion to dismiss, incorporated by reference (the "December Order"). Newcal and its co-plaintiffs compete with Defendant IKON in the market to supply and

service multiple brands of copiers, printers and facsimile equipment ("Copier Equipment") to businesses and other organizations. Defendant GE Capital is a successor-in-interest to IOS Capital, which was a fully owned subsidiary of IKON that provided lease financing and administration services for IKON. On March 30, 2004, IOS Capital was legally merged with IKON, and GE Capital acquired certain assets and liabilities of IOS including its operation that administers the leases at issue in this action.

     IKON often sells Copier Equipment through bundled cost-per-copy or other lease/rental contracts ("IKON Contracts"). The IKON Contracts provide businesses with equipment financing, bundled with supplies, parts and services for a fixed period, typically five (5) years.  It has been the practice of Newcal and other competitors to make bids to IKON customers in which they offer to replace the IKON Copier Equipment and pay for the "buy-out" or "lease-end" charges due under the IKON Contract.  However, during the five year period of the IKON contract, IKON often secures one or more amendments to the IKON Contracts that extend the period of time that customers are under contract with IKON.  Such amendments are usually secured at the same time that IKON replaces or adds copier equipment or accessories or otherwise changes the terms the original contract.  The longer contract term reduces the ability of Newcal and other competitors to make deals with IKON customers to replace IKON Copier Equipment.

     Newcal claims that IKON acquires both the original IKON Contracts and the amendments that lengthen IKON Contracts through a pattern of "fraudulent, unfair, and otherwise unlawful practices."  In terms of the original contract, for example, IKON allegedly falsely represents or conceals its intent to extend the term of the IKON Contract beyond the original term of 60 months. In terms of the amendments, IKON allegedly uses a variety of tactics to conceal the fact that the contract term is being extended when customers sign a contract amendment.  For example, Newcal claims that IKON uses "pretexts" such as representing that the customer is eligible for a "free" machine or accessories in order to induce the customer to sign the amendment without calling the customer's attention to, or even misrepresenting, the fact that the amendment lengthens the contract term.  Newcal also alleges that IKON designed the amendment forms and trained its employees in ways intended to misrepresent the contract extensions  Newcal claims that these business practices

2

allow IKON to obtain new customers at lower costs than other Copier Equipment dealers and make supracompetitive profits from the amended contracts.

The present motions seek to dismiss Newcal's First Amended Complaint ("FAC"). Newcal's original complaint in this action was filed on July 12, 2004. On December 23, 2004, the Court issued an order granting defendants' motions to dismiss and allowing Newcal an opportunity to amend the complaint. On February 14, 2005, plaintiffs filed their FAC reasserting causes of action under the Sherman Act, the Lanham Act and RICO. The FAC sets forth new allegations against Defendant GE Capital. Defendants IKON and GE Capital moved to dismiss the First Amended Complaint on March 10, 2005.

## DISCUSSION

The legal standards applicable to a motion to dismiss were set forth in this Court's December Order, and need not be repeated.

A. Antitrust Claims

In its FAC, Newcal realleges six violations of Sections 1 and 2 of the Sherman Antitrust Act. In the Court's December Order, the Court dismissed these claims because Newcal failed to allege a valid relevant market. While Newcal has made some changes to the proposed relevant markets, the Court finds that Newcal has failed to correct the material deficiencies identified in its previous order.

In the FAC, Newcal proposes two "principal relevant markets": the markets for (1) replacement Copier Equipment for IKON and GE customers with Flexed IKON Contracts and (2) Copier Service for IKON and GE customers with Flexed IKON Contracts. Newcal also proposes two "additional, broader, relevant markets": the markets for (3) the sale of Copier Service for Canon and Ricoh brand Copier Equipment and (4) the sale of Copier Equipment.

The first two proposed relevant markets are again rejected because they are defined solely in terms of IKON customers that have contracts with IKON. As stated in the December Order, the existence of power under a contract does not create market power in the antitrust sense, absent market power over a product or service. See *Queen City Pizza v. Domino's Pizza,* 124 F.3d 430, 438 (3d Cir., 1997)*; Forsyth v. Humana, Inc.*, 114 F.3d 1467 (9th Cir., 1997); *Hack v. President & Fellows of Yale College*, 237 F.3d 81 (2d Cir., 2000). Newcal's references to *Eastman Kodak Co. v.*

*Image Tech. Servs.*, 504 U.S. 451 (U.S., 1992), do not save these proposed relevant markets. In that case, the essential core of the relevant product market was not defined in terms of consumers who had contracts with Kodak, but rather in terms of the service and replacement parts required by Kodak equipment owners and controlled by Kodak. As this Court stated in its December order, in the instant case, "[i]t is the contract itself that requires them to be customers of IKON rather than the market power of IKON over any product or service. This is the critical distinction between *Eastman Kodak* and the present case." Newcal's third and fourth relevant markets also fail as Newcal is again unable to allege that IKON has market power in them. In contrast to the situation in *Eastman Kodak* where Kodak produced the copier equipment and wielded market power over the availability of service and replacement parts, IKON is merely a distributor of copier equipment and has no such market power.

In sum, Newcal's FAC has failed to cure the deficiencies in the original complaint. Any hypothetical claims that might arise from the alleged injuries of IKON customers in this case would be problems of contract law and negotiation, not antitrust problems. This Court is being called to apply antitrust law, and in order to do that, a valid relevant market and market power must be alleged. Because Newcal cannot do so, the Court must dismiss.

B. Lanham Act Claim

In its seventh claim for relief, Newcal alleges that IKON violated the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), which prohibits false and misleading statements in commercial advertising or promotion. In the Court's December Order, Newcal's Lanham Act claims were dismissed because the alleged statements were either true when stated or constituted "puffery" not actionable under the Lanham Act.

In its FAC, Newcal claims that the following false and misleading statements were made: (a) that IKON and GE would deliver flexibility in their cost-per-copy contracts and that they would lower costs for consumers; (b) that IKON and GE would deliver 95% up-time service; (c) that original IKON contracts were intended by IKON to be for a fixed term of sixty (60) months and would expire at the end of that term; (d) that IKON amendments for sixty (60) months applied only

\\\

1  to the changes on the Amendment rather than to the entire fleet of IKON or GE equipment; and (e)

2  that IKON's flexing practices had been declared legal by this Court in its December Order.

3       For similar reasons given in the December Order, Newcal again fails to state a claim under

4  the Lanham Act. The first statement alleged by Newcal to be violative of the Lanham act constitutes

5  "puffing" and is not actionable under the Lanham Act. *See, e.g., Cook, Perkiss, and Liehe, Inc. v. N.*

6  *Cal. Collection Service, Inc.*, 911 F.2d 242, 245-247 (9th Cir. 2000). The second and third

7  statements cannot be considered to have been "false or misleading representations of fact" at the

8  time they were made, and thus are not actionable under the Lanham Act. *See Coastal Abstract Serv.,*

9  *Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 730 (9th Cir., 1999). The fourth and fifth allegedly

10  false statement cannot reasonably be said to have been made in "a commercial advertisement or

11  promotion" as is required under the Lanham Act. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304

12  F.3d 829, 835 n.4 (9th Cir. 2002).

13  C. RICO Claim

14       In its eighth claim for relief, Newcal alleges that IKON violated RICO, 18 U.S.C. § 1961 et

15  seq., by engaging in a pattern of racketeering activity that consisted of repeated acts of mail fraud

16  relating to the amendment of IKON contracts. In the December Order, the Court dismissed

17  Newcal's RICO claim for failing to meet Federal Rule of Civil Procedure 9(b)'s heightened pleading

18  standard for fraud.

19       Although Newcal's FAC now pleads its RICO claim with greater specificity, it must be

20  dismissed on other grounds. To establish standing to pursue a RICO claim, a plaintiff must allege a

21  cognizable injury proximately caused by the alleged RICO violation. *Holmes v. Securities Investor*

22  *Protection Corp.*, 503 U.S. 258, 268 (1992). Section 1964(c) provides that "any person injured in

23  his business or property by reason of a violation of section 1962 of this chapter may sue therefor in

24  any appropriate United States district court." 18 U.S.C. § 1964(c). Although RICO is to be "liberally

25  construed," *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497-98 (1985), case law in the Ninth

26  circuit limits the injuries compensable under RICO. *Imagineering, Inc. v. Kiewit Pacific Co.*, 976

27  F.2d 1303, 1309-1310 (9th Cir., 1992), *Oscar v. University Students Co-operative Ass'n*, 965 F.2d

28  783, 785 (9th Cir. 1992) (en banc), petition for cert. filed, 61 U.S.L.W. 3171 (U.S. Sept. 1, 1992)

1  (No. 92-385). A showing of "injury" requires proof of concrete financial loss. *Imagineering* at 1309;
2  *Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990) (Actual injury, that is financial loss or
3  injury, is required to recover under RICO.).

4  A RICO plaintiff must also show that his injury was proximately caused by the defendant's
5  wrong. *Imagineering* at 1311 (*citing Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258).
6  This requires that there must be a direct relationship between the injury asserted and the injurious
7  conduct alleged. *Holmes* at 268-69. ("[A] plaintiff who complains of harm flowing merely from the
8  misfortunes visited upon a third person by the defendant's acts [is] generally said to stand at too
9  remote a distance to recover.") *See also Imagineering* at 1312 (holding that minority-and women-
10 owned subcontractors could not sue general contractors under RICO for an illegal scheme to evade
11 federally required quotas); *Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip
12 Morris, Inc.*, 185 F.3d 957, 963-67 (9th Cir. 1999) (holding that health care trust funds could not
13 sue tobacco companies under RICO because their injury derived from the smokers' injury); *Ass'n of
14 Wash. Pub. Hosp. Dists. v. Philip Morris, Inc.*, 241 F.3d 696, 703 (9th Cir. 2001) (holding that
15 providers of health care services could not sue tobacco companies under RICO because their injury
16 derived from the smokers' injury).

17 In the instant case, Newcal is unable to show a concrete injury that was proximately caused
18 by the defendants' wrongs. Newcal alleges that it was "foreclosed from specific [customer]
19 accounts," but this is a speculative injury that is insufficient to confer standing under RICO. *See
20 Imagineering* at 1311-12, *Lancaster Cnty. Hosp. v Antelope Valley Hosp.*, 940 F.2d 397, 406 (9th
21 Cir. 1991). Newcal also alleges direct injury on the basis that it made buy-out payments to IKON
22 and GE to enable customers to terminate their flexed contracts. Newcal, however, voluntarily
23 assumed the obligation to pay the contract termination fees in order to obtain the customers'
24 business. Courts regularly dismiss fraud-based RICO claims in which the alleged
25 misrepresentations were directed at third parties rather than at the plaintiff. *See, e.g., Byrne v.
26 Nezhat*, 261 F.3d 1075, 1110 (11th Cir., 2001), *Israel Travel Advisory Service, Inc. v. Israel Identity
27 Tours, Inc.*, 61 F.3d 1250, 1258 (7th Cir. 1995). As defendants argue, Newcal is not the proper party
28 to assert this RICO claim.

6

CONCLUSION

For the reasons stated above, Newcal has failed to state a claim under the Sherman Act, the Lanham Act, or RICO against either IKON or GE Capital.   IKON and GE Capital's motions to dismiss are therefore GRANTED.  Because Newcal has offered no basis for the Court to believe that further amendments would not be futile, Newcal's FAC is DISMISSED with prejudice.  The clerk shall close the file.

**IT IS SO ORDERED.**

_____/s/_____

Dated: May 16, 2005                              FERN M. SMITH

UNITED STATES DISTRICT JUDGE