1   BINGHAM MCCUTCHEN LLP
    Holly A. House (SBN 136045)
2   holly.house@bingham.com
    Brian C. Rocca (SBN 221576)
3   brian.rocca@bingham.com
    Three Embarcadero Center
4   San Francisco, CA  94111-4067
    Telephone:  415.393.2000
5   Facsimile:  415.393.2286

6   BINGHAM MCCUTCHEN LLP
    Gregory F. Wells (SBN 212419)
7   gregory.wells@bingham.com
    2020 K Street, NW
8   Washington, DC  20006-1806
    Telephone:  202.373.6000
9   Facsimile:  202.373.6001

10  Attorneys for Defendant
    IKON Office Solutions, Inc.
11

    MUNGER, TOLLES & OLSON LLP
    Joseph D. Lee (SBN 110840)
    joseph.lee@mto.com
    355 South Grand Avenue. 35th Fl.
    Los Angeles, CA 90071-1560
    Telephone: (213) 683-9100
    Facsimile: (213) 687-3702

    MUNGER, TOLLES & OLSON LLP
    Hojoon Hwang (SBN 184950)
    hojoon.hwang@mto.com
    560 Mission Street, 27th Fl.
    San Francisco, CA 94105-9781
    Telephone: (415) 512-4000
    Facsimile: (415) 512-4077

    Attorneys for Defendant
    General Electric Capital Corporation

12

UNITED STATES DISTRICT COURT

13

NORTHERN DISTRICT OF CALIFORNIA

14

SAN FRANCISCO DIVISION

15

16  NEWCAL INDUSTRIES, INC., a California
    Corporation; CPO, LTD., a California
17  Corporation; PINNACLE DOCUMENT
    SYSTEMS, INC., a California Corporation;
18  PACIFIC OFFICE AUTOMATION, INC., an
    Oregon Corporation; and KEARNS BUSINESS
19  SOLUTIONS, INC., a South Carolina
    Corporation,
20

21          Plaintiffs,
            v.
22

    IKON OFFICE SOLUTIONS, INC., an Ohio
23  Corporation; and GENERAL ELECTRIC
    CAPITAL CORPORATION, a Delaware
24  Corporation,

25          Defendants.

26

27

28

No. C 04-2776 JSW

DEFENDANTS' JOINT NOTICE OF
MOTION AND MOTION TO DISMISS
PLAINTIFFS' R.I.C.O. CLAIM
(18 U.S.C. § 1961 ET SEQ.) UNDER
FED. R. CIV. P. 12(b)(6)

Date:        May 20, 2011
Time:        9:00 a.m.
Place:       Courtroom 11, 19th Floor

1

## TABLE OF CONTENTS

2

Page

3  I.     INTRODUCTION AND FACTUAL SUMMARY ..........................................................1

4  II.    LEGAL STANDARD FOR MOTION TO DISMISS ........................................................1

   III.   PLAINTIFFS DO NOT HAVE STANDING TO BRING A RICO CLAIM ...................1

5         A.    Plaintiffs Allege No Compensable Injury to "Business Or Property" ..................2

6               1.    Speculative Lost Business Opportunities Are Not Viable RICO
                       Injury ..........................................................................................................3

7                     Not a concrete financial loss ...........................................................................3

8                     Not a "cognizable" business or property interest .......................................4

9               2.    Plaintiffs' Voluntary Buyout Payment Allegations Are Not
                       Compensable Injury ..................................................................................6

10        B.    Plaintiffs Fail To Meet RICO's Proximate Cause Requirement ...........................8

11              1.    IKON's Customers Are Capable Of, And Indeed Have Already
                       Sought, To Vindicate Their Own Claims .............................................9

12              2.    Plaintiffs Allege Remote Injuries That Will Be Difficult To
                       Attribute To Defendants' Alleged Wrongful Conduct..........................11

13              3.    Plaintiffs' Claims Would Require This Court To Adopt
14                     Complicated Rules Apportioning Damages To Obviate the Risk of
                       Multiple Recoveries ...............................................................................14

15  IV.    CONCLUSION ..........................................................................................................15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

CASES

4

*Adelphia Recovery Trust v. Bank of Am., N.A.*,
5
 646 F. Supp. 2d 489 (S.D.N.Y. 2009)....................................................................... 7

6

*Allen v. United Fin. Mortg. Corp.*,
 660 F. Supp. 2d 1089 (N.D. Cal. 2009) ................................................................... 8

7

*Am. Oil. Serv. v. Hope Oil Co.*,
8
 194 Cal. App. 2d 581 (1961)................................................................................... 7

9

*Anza v. Ideal Steel Supply Corp.*,
 547 U.S. 451 (2006) ................................................................................. 10, 13, 15
10

*Ashcroft v. Iqbal*,
11
 129 S. Ct. 1937 (2009) ........................................................................................... 1

12

*Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters*,
13
 459 U.S. 519 (1983) ............................................................................................. 14

14

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007) ........................................................................................... 1, 6
15

*Branch v. Tunnell*,
16
 14 F.3d 449 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa*
*Clara*, 307 F.3d 1119 (9th Cir. 2002) ..................................................................... 10
17

*Bridge v. Phoenix Bond & Indem. Co.*,
18
 553 U.S. 639 (2008) ............................................................................................. 11

19

*Bryant v. Mattel, Inc.*,
20
 573 F. Supp. 2d 1254 (C.D. Cal. 2007).................................................................... 8

21

*Budge v. Arpaio*,
22
 2010 WL 4961670 (D. Ariz. 2010)......................................................................... 4

23

*Canyon County v. Syngenta Seeds*,
 519 F.3d 969 (9th Cir. 2008)......................................................................... passim

24

*Cecena v. Allstate Ins. Co.*,
25
 358 Fed. App'x 798 (9th Cir. 2009).......................................................................... 5

26

*Diamond Multimedia Sys., Inc. v. Superior Court*,
 19 Cal. 4th 1036 (1999) ......................................................................................... 4
27

28

74012025.3          ii          Case No. CV 04-2776 JSW

DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' RICO CLAIM

1

**TABLE OF AUTHORITIES**

2

**(Continued)**

3

**Page(s)**

**CASES**

4

5    *Diaz v. Gates*,
         420 F.3d 897 (9th Cir. 2005)...................................................................... passim

6    *Guerrero v. Gates*,
7        110 F. Supp. 2d 1287 (C.D. Cal. 2000).................................................................. 8

8    *Hemi Group, LLC v. City of New York*,
         130 S. Ct 983 (2010) .................................................................................. passim
9
     *Henson v. Columbus Bank & Trust Co.*,
10       144 Ga. App. 80 (1977)...................................................................................... 8

11   *Holmes v. Sec. Investor Prot. Corp.*,
12       503 U.S. 258 (1992) ............................................................................. 1, 14, 15

13   *Imagineering, Inc. v. Kiewit Pacific Co.*,
         976 F.2d 1303 (9th Cir. 1992)........................................................................... 2
14
     *Ingraham v. Lundrigan*,
15       2010 WL 4286324 (N.D. Cal. Oct. 22, 2010) ................................................... 4

16   *Izenberg v. ETS Servs., LLC*,
17       589 F. Supp. 2d 1193 (C.D. Cal. 2008)............................................................. 5

18   *Jungers v. Benton Rural Elec. Ass'n*,
         2008 WL 819029 (E.D. Wash. Mar. 25, 2008) .............................................. 13
19
     *Keel v. Schwarzenegger*,
20       2009 WL 1444644 (C.D. Cal. May 19, 2009) ............................................... 3, 6

21   *Korea Supply Co. v. Lockheed Martin Corp.*,
22       29 Cal. 4th 1134 (2003) .................................................................................... 5

23   *Morning Star Packing Co. v. SK Foods, L.P.*,
         2010 WL 4720867 (E.D. Cal. Nov. 17, 2010) ........................................... 11, 13
24
     *Newcal Indus., Inc. v. IKON Office Solution*,
25       513 F.3d 1038 (9th Cir. 2008)................................................................... passim

26   *Oscar v. Univ. Students Coop. Ass'n*,
27       965 F.2d 783 (9th Cir. 1992)........................................................................ 2, 3

28

DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' RICO CLAIM

1

## **TABLE OF AUTHORITIES**
### (Continued)

2

3                                                                                      **Page(s)**

*Ove v. Gwinn,*
4     264 F.3d 817 (9th Cir. 2001)..............................................................5

5
*Patton v. Cox,*
6     276 F.3d 493, 495 (9th Cir. 2002)......................................................4

7
*Paulo v. Bepex Corp.,*
      792 F.2d 894 (9th Cir. 1986)..............................................................4
8
*Shepherd v. Am. Honda Motor Co.,*
9     822 F. Supp. 625 (N.D. Cal. 1993) ....................................................4

10
*Sybersound Records, Inc. v. UAV Corp.,*
11    517 F.3d 1137 (9th Cir. 2008)......................................................passim

12
*Thomas v. Baca,*
      2007 WL 738545 (C.D. Cal. Feb. 28, 2007).....................................6
13
*Thomas v. Baca,*
14    308 Fed. Appx. 87 (9th Cir. 2008) ..............................................2, 6

15
*Time Warner Entm't Co. v. Whiteman,*
16    802 N.E. 2d 886 (Ind. 2004) ..............................................................7

17
*TPS Utilicom Services, Inc. v. AT & T Corp.*
      223 F. Supp. 2d 1089 (C.D. Cal. 2002)..............................................5
18
*Tucci v. Club Mediterranee, S.A.,*
19    89 Cal. App. 4th 180 (2001)...............................................................4

20
*United States v. Renteria,*
21    557 F.3d 1003 (9th Cir. 2009)............................................................9

22    **STATUTES**

23    18 U.S.C. § 1961 ....................................................................passim

24    18 U.S.C. § 1964(c) ...............................................................................1

25    Bus. & Prof. Code § 17200 .................................................................5

26    Ga. Code Ann. § 13-1-13 .....................................................................8

27

28

DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' RICO CLAIM

1

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

**RULES**

Fed. R. Civ. Proc. 12(b)(6)............................................................................................. 1, 9

**OTHER AUTHORITIES**

55 Cal. Jur. 3d Restitution, § 44 (2005) .......................................................................... 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' RICO CLAIM

1       **NOTICE OF MOTION AND MOTION**

2       TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3               PLEASE TAKE NOTICE that on May 20, 2011 at 9:00 a.m., or as soon thereafter as the

4       matter may be heard in Courtroom 11, 19th Floor, San Francisco, California, before the

5       Honorable Jeffrey S. White, Defendants IKON Office Solutions, Inc. ("IKON") and General

6       Electric Capital Corporation ("GECC") (together, "Defendants") will and hereby do move the

7       Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for an Order dismissing

8       the Eighth Claim for Relief (based on alleged violations of the Racketeer Influenced and Corrupt

9       Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO")) asserted in the First Amended Complaint

10      ("FAC") with prejudice on the grounds that Newcal Industries, Inc., CPO, Ltd., Pinnacle

11      Document Systems, Inc., Pacific Office Automation, Inc., and Kearns Business Solutions, Inc.

12      (collectively "Plaintiffs") fail to state a claim on which relief can be granted.

13              This Motion is based on this Notice of Motion and Motion, the attached Memorandum of

14      Points and Authorities, the accompanying Request for Judicial Notice, the supporting

15      Declaration of Holly A. House, argument of counsel at the hearing, the pleadings on file in this

16      action, and all other matters of which the Court may take notice.

17      **STATEMENT OF ISSUES TO BE DECIDED**

18              Pursuant to Local Rule 7-4(a)(3), this Motion raises the following issues to be decided:

19              Does Plaintiffs' Eighth Claim for Relief for RICO violations (18 U.S.C. § 1961 et. seq.)

20      state a claim under Federal Rule of Civil Procedure Rule 12(b)(6)?  Specifically:

21      1.      Have Plaintiffs adequately pled a "compensable injury" under the RICO statute?

22              a.      Do Plaintiffs' allegations of lost business opportunities with potential

23      customers constitute a "concrete financial loss" and "harm to a specific business or

24      property interest [under] state law," *see Canyon County v. Syngenta Seeds*, 519 F.3d 969,

25      975 (9th Cir. 2008), where no Plaintiff alleges that it would have obtained specific

26      customer accounts but-for IKON's alleged conduct?

27              b.      Do Plaintiffs' allegations that they paid allegedly inflated customer

28      buyouts constitute a "concrete financial loss" and "harm to a specific business or

1   property interest [under] state law," *see id.*, where no specific Plaintiff alleges that it

2   made such a buyout payment, and in any event all such payments were made voluntarily

3   with full knowledge that the buyout demands were based on contract term extensions

4   generated by the allegedly fraudulent "flexes"?

5       2.    Have Plaintiffs adequately plead that Defendants were the proximate case of an

6   injury compensable under the RICO statute?

7           a.    Can "more direct victims … be counted on" to challenge the alleged

8   misconduct, *see Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1148 (9th Cir.

9   2008), in light of the fact that two of the customers alleged to have been misled in the

10  Complaint have litigated claims alleging the fraudulent "flexing" of their IKON

11  agreements?

12          b.    Will it be "difficult to ascertain the amount of the plaintiff's damages

13  attributable to the defendant's wrongful conduct," *see id.*, where Plaintiffs compete with

14  each other and many other firms for the customer accounts from which they claim to

15  have been foreclosed, and where several of those competitors have brought a parallel

16  action raising nearly identical claims?

17          c.    Will the Court have to "adopt complicated rules apportioning damages to

18  obviate the risk of multiple recoveries," *see id.*, in light of the aforementioned parallel

19  customer and competitor actions?

20  DATED:  March 10, 2011            BINGHAM McCUTCHEN LLP

21

22                   By:_____/s/_____

23                          Holly A. House
                        Attorneys for Defendant IKON

24               MUNGER, TOLLES & OLSON LLP

25

26                   By:_____/s/_____

27                         Joseph D. Lee
                     Attorneys for Defendant GECC

28

DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' RICO CLAIM

**1**          **SUMMARY OF ARGUMENT**

**2**          The Ninth Circuit remanded the *Newcal* Plaintiffs' RICO claim for reconsideration of the

**3**     "business or property" requirement in light of *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005).

**4**     *Diaz* and subsequent Ninth Circuit cases make clear that a RICO plaintiff must allege both (i) a

**5**     concrete financial loss and (ii) harm to a specific business or property interest that is cognizable

**6**     under state law.  *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008).  The

**7**     First Amended Complaint ("FAC ") here meets neither requirement.  The principal claimed

**8**     injury – alleged foreclosure from customer accounts – is not a "concrete" financial loss, because

**9**     it depends on a series of contingencies that may never have occurred.  Plaintiffs' injuries are

**10**    likewise too speculative to involve a cognizable state law business or property interest.  The

**11**    other claimed injury – payment of "buyout" demands to lure a customer away from IKON – does

**12**    not qualify because (a) the FAC fails to disclose which Plaintiffs allegedly made such payments,

**13**    and (b) such injuries are not cognizable under state law, because the voluntary payment doctrine

**14**    prohibits a party from suing to recover an injury it has inflicted on itself.

**15**          The Ninth Circuit held that three factual questions prevented dismissal in view of RICO's

**16**    "proximate cause" requirement.  Subsequent factual and legal developments mandate dismissal.

**17**    The first question, whether "more direct victims…can be counted on" to sue, is now established:

**18**    two of the very customers identified in the FAC have litigated claims alleging fraudulent

**19**    "flexing" of their agreements.  This implicates the other two questions, namely difficulties in

**20**    ascertaining the Plaintiffs' damages and the need for "complicated rules apportioning damages to

**21**    obviate the risk of multiple recoveries."  Those concerns are compounded by the filing of *Global*

**22**    *Services*, requiring that damages be apportioned not just between customers and IKON

**23**    competitors, but between 17 separate competitors (who also compete with one another).  And

**24**    intervening decisions (*Hemi Group, LLC v. City of New York*, 130 S. Ct 983 (2010); *Sybersound*

**25**    *Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008), and *Canyon County*) have clarified

**26**    that the Court can and should dismiss a RICO claim in precisely the circumstances alleged here:

**27**    where a number of causal steps separate the alleged fraud from the claimed injury, and various

**28**    contingencies would complicate the analysis at each step.

DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' RICO CLAIM

1    **I.      INTRODUCTION AND FACTUAL SUMMARY**

2          This was not a viable RICO case when it was first filed, and given recent developments

3    in RICO law, it is not a viable RICO case today.  Plaintiffs' RICO claim should be dismissed.

4          Plaintiffs compete with IKON and numerous other companies in various locations in the

5    U.S. in the highly competitive industry of providing copiers and office imaging equipment and

6    service.  FAC ¶¶ 30-34.  With Defendant GECC serving as its financing partner, Defendant IKON

7    regularly renegotiates contracts with customers as the customers' needs change over time.  This

8    unremarkable process, known as "flexing," is achieved through signed contract amendments.  *Id.*

9    ¶ 1, 5.

10         Plaintiffs complain that IKON salespersons misled customers about how flex

11   amendments extended agreements beyond the original contract term.  *Id.* ¶¶ 6, 8.  This purported

12   fraud on customers – mostly sophisticated commercial entities with dedicated procurement

13   personnel – is the foundation of Plaintiffs' RICO claim.  *Id.* ¶ 159.  Plaintiffs' claimed injuries

14   are indirect and derive from IKON's purported fraud on its customers, which Plaintiffs claim (a)

15   denied them the chance to lure away "flexed" IKON customers, or (b) made it more costly to buy

16   out contracts of the "flexed" IKON customers they did get.  *Id.* ¶¶ 143-164 & Ex. C.

17   **II.     LEGAL STANDARD FOR MOTION TO DISMISS**

18         The evolved pleadings standard under Rule 12(b)(6) is well known.  Plaintiffs must

19   provide more than "labels and conclusions" and "a formulaic recitation of the elements of a

20   cause of action."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations

21   omitted).  Plaintiffs must allege facts which are sufficient "to state a claim to relief that is

22   plausible on its face."  *Id.* at 570; *accord Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

23   **III.    PLAINTIFFS DO NOT HAVE STANDING TO BRING A RICO CLAIM**

24         Under 18 U.S.C. § 1964(c), only those "injured in [their] business or property by reason

25   of a violation of" the RICO statute may bring a RICO civil action.  To establish RICO standing,

26   Plaintiffs must first allege they suffered a compensable injury to their "business or property."

27   Second, Plaintiffs must allege that this injury was proximately caused by Defendants' alleged

28   racketeering activity.  *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 266-68 (1992).

1   Plaintiffs cannot satisfy either requirement.

2   **A.      Plaintiffs Allege No Compensable Injury to "Business Or Property"**

3   The District Court, relying on *Oscar v. Univ. Students Coop. Ass'n*, 965 F.2d 783 (9th

4   Cir. 1992) (en banc), and *Imagineering, Inc. v. Kiewit Pacific Co.*, 976 F.2d 1303 (9th Cir.

5   1992), dismissed Plaintiffs' RICO claim, holding that the injuries alleged were too speculative to

6   qualify as injury to "business or property" under RICO.  Dkt 57, at 5-6.  On appeal, the *Newcal*

7   panel stated that, "[s]ince the district court issued its order, we have overturned the rules on

8   which the court relied.  In *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (*en banc*), we held

9   that an injury is compensable under RICO if the injury constitutes 'harm to a specific business or

10  property interest' and if the alleged business or property interest is cognizable under state law."

11  *Newcal Indus., Inc. v. IKON Office Solution*, 513 F.3d 1038, 1055 (9th Cir. 2008).  Noting that

12  "[t]he district court has not had the opportunity to consider *Diaz*," the Ninth Circuit remanded

13  the RICO claim "for reconsideration of the compensable injury requirement under *Diaz*."  *Id.*

14  This statement suggested that a rule the Ninth Circuit had cited as "well recognized" in

15  *Oscar* – namely that "a showing of [RICO] 'injury' requires proof of concrete financial loss,"

16  965 F.2d at 785 – did not survive *Diaz*.  Yet in its most recent formulation of the showing

17  required to allege a compensable injury to business or property under RICO, the Ninth Circuit –

18  citing *Oscar* – reiterated the "concrete financial loss" requirement, stating the test as follows:

19  > Our circuit requires that a plaintiff asserting injury to property allege "concrete financial loss."  *Oscar v. Univ. Students Coop. Ass'n*, 965 F.2d 783, 785 (9th
20  > Cir. 1992) (en banc).  Financial loss alone, however, is insufficient.  "Without a harm to a specific business or property interest – a categorical inquiry typically
21  > determined by reference to state law – there is no injury to business or property within the meaning of RICO."  [citing *Diaz*, 420 F.3d at 900].

22  *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975  (9th Cir. 2008).

23  As *Canyon County* makes clear, the intimation of the *Newcal* panel that *Oscar* is no

24  longer good law is incorrect.  The Ninth Circuit confirmed this in a recent unpublished opinion.

25  After noting *Newcal's* suggestion that *Diaz* overruled *Oscar*, the court stated:  "our more recent

26  holding in *Canyon County* explicitly states that '"concrete financial loss"' is a necessary element

27  of a RICO claim … and *Diaz* itself employs the 'financial loss' requirement."  *Thomas v. Baca*,

28  308 Fed. Appx. 87, 88 n.1 (9th Cir. 2008).

1   Based on the Ninth Circuit's most recent formulation of the test in this Circuit, a RICO

2   plaintiff must allege both (i) a "concrete financial loss" under *Oscar,* and (ii) "harm to a specific

3   business or property interest" that is "cognizable under state law" under *Diaz.*  As shown below,

4   neither of the injuries alleged by Plaintiffs here satisfies these elements.

5            **1.**      **Speculative Lost Business Opportunities Are Not Viable RICO Injury**

6   Plaintiffs first claim they have been "foreclosed from … specific [IKON] accounts" by

7   the allegedly fraudulent extension (or "flexing") of agreements between IKON and its customers.

8   FAC, ¶ 162; Ex. C (RICO Statement), ¶¶ 4, 17.  This alleged injury is insufficient.

9   *Not a concrete financial loss:*  While the FAC identifies specific accounts from which

10   Plaintiffs contend they were foreclosed, it nowhere alleges that Plaintiffs would actually have

11   *won* any of these IKON customers, in competition with other market participants.  To be injured

12   by this alleged "foreclosure," each Plaintiff would have to prove it would have obtained specific

13   accounts *but for* the alleged fraud.  Plaintiffs cannot plausibly allege such a concrete financial

14   injury, because too many contingent factors – including the various competitors' reputations,

15   product offerings, geographic coverage, and pricing, as well as the customers' own preferences –

16   stood between Plaintiffs and their goal.  Absent a plausible allegation that they would have won

17   these specific accounts, competing against other market participants and even sometimes with

18   one another – an allegation Plaintiffs cannot make – Plaintiffs suffered *no* harm, much less the

19   *concrete* financial loss required in this Circuit to plead a RICO injury.

20   *Keel v. Schwarzenegger*, 2009 WL 1444644 (C.D. Cal. May 19, 2009), illustrates this

21   rule.  In *Keel*, the plaintiff alleged that he was deprived of a resentencing hearing and immediate

22   release from prison, which would have "resulted in gainful employment as a paralegal and/or

23   self-employment opportunities."  *Id.* at *6.  The District Court rejected the claim.  Quoting

24   *Oscar,* the court noted that "in the Ninth Circuit, 'injuries to property are not actionable under

25   RICO unless they result in tangible financial loss to the plaintiff.'"  *Id.* at *5.  The court held:

> 26   Plaintiff's allegations involve prospective damages which are not
>       compensable, absent concrete financial loss.  The alleged injury of
> 27   "lost business opportunities" does not constitute a RICO injury.

28   *Id.* at *6.

DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' RICO CLAIM

1     Similarly, in *Shepherd v. Am. Honda Motor Co.*, 822 F. Supp. 625 (N.D. Cal. 1993), the

2  court considered whether a scheme that allegedly diverted popular cars from plaintiff to other

3  dealers caused concrete financial loss when plaintiff sold its dealership at a "distressed price."

4  Addressing compensable injury and proximate cause together, the court concluded:

> 5  There can be no doubt that the alleged diversion tactics and reduced
> allocations would have been likely to have some adverse effect on the
> 6  profitability of the Sheperds' dealership, and consequently affect the
> market value of the dealership.  But the financial losses reflected in
> 7  reduced profitability and a distressed sale price are too attenuated from the
> alleged wrongful conduct of defendants to give plaintiffs standing to
> 8  recover treble damages under RICO.

9  *Id.* at 630.

10     *Not a "cognizable" business or property interest:*  Nor is the alleged foreclosure from

11  customer accounts an injury cognizable under state law, as required by *Diaz*.  Because the FAC

12  preceded *Diaz*, it did not identify any state law supporting a "cognizable" business or property

13  interest.  Although Plaintiffs' original complaint included two state law claims, they omitted

14  those claims from their FAC and never sought to re-plead them, thereby dismissing them.  *Budge*

15  *v. Arpaio*, 2010 WL 4961670, *5 (D. Ariz. 2010).  This leaves Defendants to guess as to the state

16  law under which Plaintiffs might contend their asserted RICO injuries are cognizable, rendering

17  the FAC fatally uncertain.  *See Ingraham v. Lundrigan*, 2010 WL 4286324, at *5 (N.D. Cal. Oct.

18  22, 2010) (complaint must "plead a short and plain statement of the elements of his or her claim,

19  identifying the transaction or occurrence giving rise to the claim and the elements of the prima

20  facie case.").  This uncertainty is compounded by the presence of two out-of-state Plaintiffs

21  doing business outside California, seemingly requiring reference to the law of another state or

22  states to apply *Diaz*.[1]  It is not Defendants' burden to divine and refute every state law theory

---

[1] No post-*Diaz* case has addressed *which* state laws must be referred to where, as here, an out-of-state plaintiff brings a RICO case in this Circuit alleging injuries sustained outside the forum.  Presumably, the answer lies in the choice of law rules of the forum state, here California.  *See Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002) (federal court "must look to the forum state's choice of law rules to determine the controlling substantive law").  Under California's governmental interest test (*see Tucci v. Club Mediterranee, S.A.*, 89 Cal. App. 4th 180, 188 (2001)), the most likely outcome would be that out-of-state Plaintiffs must demonstrate an injury cognizable under the laws of the states in which their claims arose.  This is because California "has little interest in applying its law to compensate" nonresidents for alleged injuries sustained out of state.  *Paulo v. Bepex Corp.*, 792 F.2d 894, 896 (9th Cir. 1986); *see also Diamond*

(Footnote Continued on Next Page.)

DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' RICO CLAIM

1    Plaintiffs might invoke to support their claims.  *See Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d

2    1193, 1200 (C.D. Cal. 2008) ("[U]nder Fed. R. Civ. P. 8, Defendant need not guess which

3    provision of law Plaintiff is suing under . . . ."); *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001)

4    (plaintiffs must allege all of the elements of a RICO cause of action, including "injury to

5    plaintiffs' 'business or property'").

6         Nor can Plaintiffs show the required "cognizable" state law interest by relying on the

7    California state law claims in their original Complaint, for interference with prospective

8    economic advantage and for violation of California's Unfair Competition Law, Bus. & Prof.

9    Code § 17200 *et seq* ("UCL").  The UCL remedy is restitution; it does not permit recovery of

10   damages.  *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150 (2003)

11   (rejecting "nonrestitutionary disgorgement" of profits remedy).  Plaintiffs have no conceivable

12   restitutionary claim for alleged lost business opportunities.  *See Cecena v. Allstate Ins. Co.*, 358

13   Fed. App'x 798, 800 (9th Cir. 2009) (UCL plaintiffs "do not have a property interest in any

14   money that should have been paid to them by Allstate under their policy but wasn't").

15        Nor can Plaintiffs establish a cognizable property interest under a tortious interference

16   with business relations theory.  California law holds that "[a]n allegation of interference with a

17   *potential* customer is too speculative to state a claim for interference with prospective economic

18   advantage."  *TPS Utilicom Services, Inc. v. AT & T Corp.* 223 F. Supp. 2d 1089, 1106 (C.D. Cal.

19   2002) (emphasis in original).  The tort "protects the expectation that [an existing economic]

20   relationship eventually will yield the desired benefit, not necessarily the more speculative

21   expectation that a potentially beneficial relationship will arise."  *Korea Supply*, 29 Cal. 4th at

22   1164 (quotation marks omitted).  But that "speculative expectation" is all that is pled – not any

23   existing economic relationship with the IKON customers from whom Plaintiffs claim

24   foreclosure.

25        *Diaz* is not to the contrary.  There, the plaintiff sued defendant police officers (and

26   _____

27   (Footnote Continued from Previous Page.)

     *Multimedia Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036, 1058-59 (1999) (California has a

28   presumption against extraterritorial application of its remedial statutes).

DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' RICO CLAIM

1   others) under RICO, alleging that the defendants had fabricated evidence against him to obtain a

2   false conviction and that, as a result, he lost his employment, wages, and other compensation.

3   420 F.3d at 898.  The Ninth Circuit held that Diaz had adequately alleged harms to property

4   interests that were protected under California's established torts of intentional interference with

5   contract and interference with prospective business relations.  *Id.* at 900.  But *Diaz* does not

6   mean that merely invoking a recognized tort is sufficient to establish a cognizable property

7   interest:  as later decisions have emphasized, RICO plaintiffs must demonstrate that they have a

8   viable claim under a specific tort, and conclusory allegations of harm to business or property do

9   not suffice.  Thus, in *Keel, supra*, the plaintiff claimed that he was deprived of employment

10   opportunities, asserting a property interest based on the torts of "intentional interference with

11   prospective economic relations, prospective business, and prospective contracts."  2009 WL

12   1444644, at *6.  The court rejected this claim, reasoning that "Plaintiff's allegations merely

13   recite what may be considered a property interest under RICO and are insufficient by themselves

14   to state an injury thereunder."  *Id.*  Similarly, in *Thomas v. Baca*, 2007 WL 738545 (C.D. Cal.

15   Feb. 28, 2007), the plaintiffs alleged "a business injury based on loss of wages due to obstruction

16   of justice in their federal proceedings" based on alleged prison overcrowding.  2007 WL 738545,

17   at *6.  Judge Pregerson held that the conclusory allegation that plaintiffs' "employment prospects

18   were harmed" was insufficient to allege a cognizable state interest:  "[w]hile California law does

19   protect the interest in future contractual relations, . . . the issue here relates to the conditions of

20   confinement, not the length or fact of confinement," and thus the allegations "cannot implicate a

21   business or property interest."  *Id.* at *7.

22       Here, as in *Keel* and *Thomas*, it is not enough that Plaintiffs might refer to a recognized

23   tort to claim harm to their property interests.  They must allege concrete facts that plausibly

24   demonstrate they could bring a viable claim under that tort theory.  *See Twombly*, 550 U.S. at

25   557.  Having failed to do so, they cannot claim a property interest on this basis.

26           **2.    Plaintiffs' Voluntary Buyout Payment Allegations Are
                     Not Compensable Injury**

27       The second alleged injury is as follows:  "Plaintiffs paid monies directly to IKON and

28   GE" on "Flexed IKON Contracts," to buy out those contracts and take a particular customer

1   away from IKON.  FAC, ¶¶ 159-161; RICO Statement, ¶¶ 4, 17.  Presumably, Plaintiffs mean to

2   allege that the amount of these buyout payments were inflated due to the supposedly improper

3   extension of the agreements' terms.  *See* FAC, ¶ 81 (alleging that "'buy-out' numbers would

4   require payment for all unused parts, supplies and service, until the end of the extended term

5   …").  For two reasons, this allegation fails.

6           First, even assuming such payments constitute compensable injury, to avoid dismissal,

7   *each Plaintiff* must allege it made such a payment, or else it was not injured and lacks standing.

8   Plaintiffs here improperly resort to collective pleading, alleging that payments were made "by

9   plaintiffs" without alleging each Plaintiff has made a buyout payment, let alone which Plaintiff

10  made which payment.[2]  *See* FAC, ¶ 161.  Such collective pleading is insufficient to satisfy even

11  the lesser Rule 8 requirement and mandates dismissal.  *See Adelphia Recovery Trust v. Bank of

12  Am., N.A.*, 646 F. Supp. 2d 489, 494 (S.D.N.Y. 2009) ("Lumping together all the [defendants]

13  without identifying specific [transactions] fails to meet the pleading requirements of Fed. R. Civ.

14  P. 8(a).").

15          Second, even if each Plaintiff had alleged a buyout payment, such allegation would still

16  merit dismissal under California law:  Plaintiffs cannot confer RICO standing on themselves by

17  voluntarily making the buyout payments they now contend were improper.  Under the voluntary

18  payment doctrine, a "person who with full knowledge of the facts voluntarily and without fraud

19  or coercion pays money to another upon a claim of right, which he or she is under no legal

20  obligation to pay, cannot recover the same in an action…."  55 Cal. Jur. 3d Restitution, § 44

21  (2005).  "[A] payment voluntarily made with knowledge of the facts affords *no ground* for an

22  action to recover it back."  *Am. Oil. Serv. v. Hope Oil Co.*, 194 Cal. App. 2d 581, 586 (1961)

23  (emphasis added).[3]  Plaintiffs' voluntary choice to make buyout payments knowing that the

---

24  [2] All the named customers on whose behalf the alleged payments were made are located in
    California, *see* FAC, ¶ 161, making it implausible that Pacific Office Automation (from Portland,
25  Oregon, FAC, ¶ 33) or Kearns Business Solutions (from Easley, South Carolina, FAC, ¶ 34)
    made any of these alleged payments.

26  [3] Plaintiffs' allegation that customers were defrauded into extending their leases does not change
27  this result.  While the voluntary payment doctrine recognizes an exception for fraud, that
    exception applies only where the payor itself has been defrauded.  *See Time Warner Entm't Co.
28  v. Whiteman*, 802 N.E.2d 886, 889 (Ind. 2004) ("[M]oney voluntarily paid with a full knowledge

(Footnote Continued on Next Page.)

DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' RICO CLAIM

1    buyout demand was based on the term extensions generated through the allegedly fraudulent

2    flexes precludes them from claiming damages based on those payments.  Because California law

3    does not permit Plaintiffs to sue for payments they voluntarily made, they have no property

4    interest in these payments cognizable under state law.  *See Diaz*, 420 F.3d at 900.[4]

5          One final but important point remains.  Even assuming Plaintiffs' voluntary payments

6    were a compensable injury, they could at most recover for this limited injury – specifically, the

7    amount of the buyout payments that exceeded what they would have paid absent the alleged

8    fraud.  Plaintiffs cannot rely on these payments to transform their amorphous lost business

9    opportunities into a compensable injury to business or property.  *See Guerrero v. Gates*, 110 F.

10   Supp. 2d 1287, 1293 n.1 (C.D. Cal. 2000) ("[A]ny damages will be limited to the extent of the

11   tangible financial injury . . . .").  At a minimum, therefore, the RICO claim must be dismissed to

12   the extent that it alleges any injury other than specific buyout payments made by a particular

13   Plaintiff.  *See Bryant v. Mattel, Inc.*, 573 F. Supp. 2d 1254, 1265 (C.D. Cal. 2007) (granting

14   partial dismissal of RICO claims); *see also Allen v. United Fin. Mortg. Corp.*, 660 F. Supp. 2d

15   1089, 1098 (N.D. Cal. 2009) (dismissing cause of action "to the extent that it asserts a claim for

16   damages, but remains to the extent that it seeks only rescission").

17   **B.      Plaintiffs Fail To Meet RICO's Proximate Cause Requirement**

18         The *Newcal* panel remanded the RICO proximate cause issue for this Court to evaluate

19   under three factors:  "(1) whether there are more direct victims of the alleged wrongful conduct

20   who can be counted on to vindicate the law as private attorneys general; (2) whether it will be

21   difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful

22   _____

23   (Footnote Continued from Previous Page.)

24   of all the facts, and without any fraud or imposition *on the payor*, cannot be recovered back,
     although it was not legally due.") (emphasis added).  Here, there is no allegation that when
     Plaintiffs made the buyout payments, they were unaware that the customers had been flexed, or

25   that the buyout amount reflected the extended term.

26   [4] The same is true under Georgia law, which is the law typically specified in IKON's customer
     agreements, reflecting the fact that IKON Financial Services was based in Macon, Georgia.  *See*
     Ga. Code Ann. § 13-1-13; *Henson v. Columbus Bank & Trust Co.*, 144 Ga. App. 80, 82 (1977)

27   ("By [reason of] his voluntary payment of the interest demanded by CB&T . . . , Henson cannot
     demand the return of the interest based upon an alleged breach of contract.").

28

**DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' RICO CLAIM**

1   conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages

2   to obviate the risk of multiple recoveries." *Newcal*, 513 F.3d at 1055 (quotation omitted).  While

3   the Ninth Circuit held that such factual questions could not be resolved "on a Rule 12(b)(6)

4   motion in this case,"  the court did not hold that such questions could *never* be resolved at the

5   motion to dismiss stage.  If there were any doubt on that score, subsequent decisions have

6   confirmed that the Supreme Court and the Ninth Circuit can and do still dismiss for lack of

7   proximate cause on a 12(b)(6) motion.  *See Hemi Group LLC v. City of New York*, 130 S. Ct 983,

8   986 (2010) (plurality opinion); *Canyon County*, 519 F.3d at 982 n.12.

9         In the three years since the Ninth Circuit's decision came down, both the underlying facts

10   and the governing law have significantly changed, meriting re-examination of whether the

11   proximate cause issue is suitable for resolution at this stage.  First, there are new facts not before

12   the Ninth Circuit and subject to judicial notice that bear directly on the first and third proximate

13   cause factors, namely that (a) two customers have brought suits alleging fraud in the flex of their

14   leases, showing that direct victims can be expected to sue; and (b) twelve new competitors have

15   filed a parallel action pending before this Court, further and significantly complicating the

16   apportionment of damages problem.  Second, three new cases issued after *Newcal* have clarified

17   the second factor by illustrating when speculative injuries are too remote to support a finding of

18   proximate cause.  Given these changed circumstances and new law, it is clear Plaintiffs cannot

19   satisfy the demanding proximate cause standard, and their RICO claims should be dismissed.

20   *See Canyon County*, 519 F.3d at 982 n.12 ("[C]ourts need not allow RICO plaintiffs leeway to

21   continue on with their case in an attempt to prove an entirely remote causal link.").[5]

22              **1.    IKON's Customers Are Capable Of, And Indeed Have
                         Already Sought, To Vindicate Their Own Claims**
23

24         The Supreme Court has instructed that "[t]he requirement of a direct causal connection is

25   especially warranted where the immediate victims of an alleged RICO violation can be expected

---

26   [5] The Ninth Circuit's decision not to resolve proximate cause at the motion to dismiss stage is
     not binding as law of the case.  Two of the recognized reasons that warrant departure from law of
27   the case – "intervening change in the law" and "other changed circumstances" – are present here.
     *United States v. Renteria*, 557 F.3d 1003, 1006 (9th Cir. 2009).
28

1    to vindicate the laws by pursuing their own claims." *Anza v. Ideal Steel Supply Corp.*, 547 U.S.

2    451, 460 (2006).  This is consistent with the first factor identified by the Ninth Circuit in *Newcal*:

3    "whether there are more direct victims of the alleged wrongful conduct who can be counted on to

4    vindicate the law as private attorneys general."  513 F.3d at 1055.

5          When *Newcal* was decided, the record was silent on the issue of whether "more direct

6    victims" of the supposed fraud – namely, IKON customers whose agreements had allegedly been

7    fraudulently extended – could "be counted on to vindicate the law."  That record is silent no

8    longer.  As reflected in Exhibits A ("Jackson & Wallace Complaint") and B ("Ridgecrest

9    Complaint") to the Accompanying Request for Judicial Notice, two IKON customers –

10    represented by one of the law firms representing Plaintiffs in this case – have sued IKON and GE

11    alleging that they were defrauded into signing flex agreements that extended their contracts.

12    This Court can consider these judicially noticeable facts on a motion to dismiss without

13    converting it to a motion for summary judgment.  *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th

14    Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119

15    (9th Cir. 2002).

16          The allegations in the customer actions not only parallel, but are often identical to, the

17    allegations of the FAC here.[6]  Confirming the substantial overlap between the claims here and

18    those asserted in the two customer suits, those two customers – Jackson & Wallace, LLP and

19    Ridgecrest Regional Hospital – are two of the entities identified in Plaintiffs' FAC in this case,

20    as customers from whose business the Plaintiffs were allegedly foreclosed.  FAC, ¶ 155, 162.

21          These factual developments remove any uncertainty about whether the direct victims of

22

---

23    [6] *Compare, e.g.*, Jackson & Wallace Compl., ¶ 57 ("IKON purposely made the IKON
Amendment form simple looking so that the customer would not realize IKON was extending
24    the term on <u>all</u> IKON equipment the customer's had by just signing the simple form."), *with* FAC
¶ 68 ("IKON purposely made the IKON Amendment form simple looking and changed it so that
25    the customer would not realize IKON was extending the term on <u>all</u> equipment in the customer's
IKON fleet by just signing the form."); Ridgecrest Compl., ¶ 79(a) ("IKON represented that its
26    IKON Contract allowed "flexibility" for the customers' needs – but concealed that such
flexibility had, as its primary purpose and effect, the extension of the term of the IKON
27    Contract."), *with* FAC ¶ 62(a) ("IKON represented that its IKON Contract allowed flexibility to
customer needs – but concealed that such flexibility had, as its primary purpose and effect, the
28    extension of the term of the IKON Contract.").

1    IKON's supposed fraud can be expected to vindicate their own interests:  they not only can be

2    *expected* to do so, but they have *in fact* done so.  Thus, the first factor identified by the Ninth

3    Circuit as requiring further factual development is now established.  *See Morning Star Packing*

4    *Co. v. SK Foods, L.P.*, 2010 WL 4720867, at *5 (E.D. Cal. Nov. 17, 2010) (direct causal

5    connection needed because more immediate victims were pursuing their claims in two pending

6    actions).  Given *Anza*'s directive that dismissal is "especially warranted" where this factor is

7    satisfied, the Court should dismiss on this basis alone.

8             **2.      Plaintiffs Allege Remote Injuries That Will Be Difficult
                         To Attribute To Defendants' Alleged Wrongful Conduct**
9
             Three cases that were issued after the *Newcal* panel's decision have clarified just how

10   demanding the proximate cause bar is under RICO and illustrate why dismissal is appropriate

11   here and now.  First, in *Hemi Group*, 130 S. Ct. at 986, a plurality of the Supreme Court held that

12   an online cigarette retailer's failure to report customer information to New York State as required

13   by federal law was not the proximate cause of New York City's lost revenue when its residents

14   failed to pay taxes on cigarette purchases.  The complex causal chain ran from the retailer's

15   failure to report information to the State, to the State's inability to pass the information on to the

16   City (assuming it would have been inclined to do so), to the City's inability to pursue the

17   customers that had failed to pay their taxes.  *Id.* at 989 (plurality opinion).  The Court

18   emphasized that "[m]ultiple steps . . . separate[d] the alleged fraud from the asserted injury," and

19   the City's "theory of liability rest[ed] on the independent actions of third [the State] and even

20   fourth [the taxpayer] parties."  *Id.* at 992.[7]  Concerned about creating RICO liability to third

21   parties to whom defendant "owed no duty," and "imposing such liability to substitute for or

22   complement" the direct victim's own "uncertain ability or desire" to remedy the complained-of

23

24   _____

25   [7] How the Court distinguished *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) is
     also instructive.  In *Bridge*, the Court had found sufficient proximate cause to sustain a RICO
26   claim because the plaintiff's theory of causation was "straightforward": "each time a fraud-
     induced bid was awarded, a particular legitimate bidder was necessarily passed over" and "[t]he
27   losing bidders, moreover, 'were the *only* parties injured by petitioners' misrepresentations.'"
     *Hemi Group*, 130 S.Ct. at 992 (quoting *Bridge*, 553 U.S. at 658) (emphasis added).  That
     certainty and limited causal spread were not present in *Hemi Group* and are not present here.

28

1    fraud, and because RICO "liability comes with treble damages and attorneys fees attached," the

2    Supreme Court reiterated that RICO's "reach is limited by the 'requirement of a direct causal

3    connection' between the predicate wrong and the harm.'" *Id.* at 994 (quoting *Anza*, 547 U.S. at

4    460). The Court confirmed that indirect plaintiffs, such as those here, "cannot escape the

5    proximate cause requirement merely by alleging that the fraudulent scheme embraced all those

6    indirectly harmed by the alleged conduct. Otherwise our RICO proximate cause precedent

7    would become a mere pleading rule." *Id.* at 991.

8        Second, in *Canyon County*, 519 F.3d at 972, the Ninth Circuit endorsed scrutiny of RICO

9    proximate cause at the pleading stage, explaining this early effort is intended to "prevent

10   intricate, uncertain inquiries from overrunning RICO litigation." *Id.* at 981-82 (quoting *Anza*,

11   547 U.S. at 460). The Ninth Circuit considered whether a scheme of hiring undocumented

12   immigrants proximately caused damages to an Idaho county in the form of increased public

13   health and law enforcement costs. In holding at the motion to dismiss stage that proximate cause

14   was wanting, the court emphasized the "numerous alternative causes" that might have

15   contributed to the county's alleged increased costs. *Id.* at 983. That there were multiple causal

16   variables further complicated the already difficult task of constructing the "alternative scenario

17   of what would have occurred had the companies employed legally authorized workers." *Id.*

18       The third decision, *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1141 (9th

19   Cir. 2008), is a case much like this one, involving RICO claims by competing karaoke record

20   producers based on defendants' allegedly fraudulent statements to their customers regarding

21   whether the defendants owned copyrights to licensed songs. The plaintiff claimed that

22   defendants' practice of not obtaining necessary copyrights enabled them to lower their prices and

23   thereby deprived the plaintiff of business. *Id.* at 1147. In holding that this allegation did not

24   satisfy RICO's proximate cause requirement, the court reasoned that it

25               would have to engage in a speculative and complicated analysis to
             determine what percentage of Sybersound's decreased sales, if any,
26           were attributable to the Corporation Defendants' decision to lower
             their prices or a Customer's preference for a competitor's products
27           over Sybersound's, instead of to acts of copyright infringement or
             mail and wire fraud. . . . This case would require an even more
28           speculative analysis than *Anza* because Sybersound has more than

DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' RICO CLAIM

1                     one principal competitor.

                           As noted by the Supreme Court, "[t]he element of

2                    proximate causation recognized in *Holmes* is meant to prevent
these types of intricate, uncertain inquiries from overrunning RICO

3                    litigation.  It has particular resonance when applied to claims
brought by economic competitors, which, if left unchecked, could

4                    blur the line between RICO and the antitrust laws.

5   *Id.* at 1148-49 (quoting *Anza*, 547 U.S. at 460).  Cases following *Sybersound* have applied its

6   reasoning to competitive injury claims closely akin to those alleged here.  In *Morning Star*, the

7   court held that alleged inability to compete for contracts was insufficient, because "Plaintiffs

8   could have failed to secure contracts for a number of reasons unconnected to Defendants' alleged

9   RICO violation."  2010 WL 4720867, at *5.  *Accord Jungers v. Benton Rural Elec. Ass'n*, 2008

10  WL 819029, at *4 (E.D. Wash. Mar. 25, 2008) (plaintiffs' harm too attenuated because, as in

11  *Sybersound*, "a business's lost sales may be attributable to many different reasons").

12         From these cases, two related but distinct principles have emerged.  In assessing whether

13  a RICO plaintiff's injuries are so remote as to fail RICO's proximate cause standard, a court

14  must take into account (1) the number of causal steps separating the alleged fraud from the

15  injury, and (2) the various contingencies or alternative causes that would complicate the analysis

16  at each step, particularly when claims are brought by economic competitors.

17         Under these guiding principles, Plaintiffs' alleged injuries are far too remote to establish

18  proximate cause, mandating dismissal.  Plaintiffs would have to show that, but for the alleged

19  fraud, (1) the IKON customer would not have extended the term of its agreement with IKON; (2)

20  the customer would have considered one of the Plaintiffs as an alternative to IKON and to other

21  competitors not before the Court; and (3) Plaintiffs would have been able to win that customer in

22  competition with IKON and other competitors.  As noted earlier, there are multiple factors

23  present here – mirroring the ones in *Sybersound* – that could have caused any particular customer

24  to choose IKON or other competitors over the Plaintiffs, including reputation, product offerings,

25  geographic coverage, pricing, and customer preferences.  As the Supreme Court observed in

26  rejecting a comparable RICO claim on the pleadings:  "Businesses lose and gain customers for

27  many reasons, and it would require a complex assessment to establish which portion of [each

28  plaintiff's] lost sales were the product of [defendant's alleged fraud]."  *Anza*, 547 U.S. at 459.

1    Given that the proximate cause analysis tends not to look "beyond the first step," the

2    injury to Plaintiffs here is clearly "indirect[t]." *Hemi Group*, 130 S. Ct. at 989 (quoting *Holmes*,

3    503 U.S. at 271). And the numerous contingencies involved demonstrate why the causal chain

4    could fall apart at any one of the three steps. Thus, the near impossibility of attributing in a non-

5    speculative fashion any of Plaintiffs' alleged lost business to the conduct of Defendants dictates

6    that the RICO claims be dismissed for lack of proximate cause. As with the first factor, this

7    conclusion independently suffices to warrant dismissal. *See Canyon County*, 519 F.3d at 983

8    (declining even to consider whether there were more direct victims likely to sue because the

9    injury was so remote as to require dismissal on that basis alone); *see also Sybersound*, 517 F.3d

10   at 1149 (dismissing under the first and second factors).[8]

11           **3.**       **Plaintiffs' Claims Would Require This Court To Adopt**
       **Complicated Rules Apportioning Damages To Obviate**
12     **the Risk of Multiple Recoveries**

13   The Supreme Court has explained that the prospect of having "to adopt complicated rules

14   apportioning damages among plaintiffs removed at different levels of injury from the violative

15   acts" cautions against recognizing the claims of the indirectly injured. *Holmes*, 503 U.S. at 269;

16   *see also Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters*, 459

17   U.S. 519, 545 (1983) ("[M]assive and complex damages litigation not only burdens the courts,

18   but also undermines the effectiveness of treble-damages suits."). In *Holmes*, the Court

19   considered whether a stock-manipulation scheme that led two broker-dealers to default on their

20   obligations to customers proximately caused harm to the Securities Investor Protection

21   Corporation (SIPC), which was obligated to reimburse customer losses. 503 U.S. at 261. The

22   SIPC brought suit as the subrogee of customers that had *not* purchased any manipulated

23   securities. *Id.* at 271. The Court emphasized the difficulty of "hav[ing] to find some way to

24   apportion the possible respective recoveries by the broker-dealers and the [SIPC], who would

25

_____

[8] This conclusion is not avoided by alleging, as the FAC does, that Defendants' alleged fraud
26   was intended to injure Plaintiffs and had the foreseeable effect of doing so. FAC ¶¶ 143-64.
     *Hemi Group* expressly rejected a foreseeability or intent test: "the focus is on the directness of
27   the relationship between the conduct and the harm." 130 S. Ct. at 991 (plurality opinion); *see
     also id.* (noting that prior cases "never even mention the concept of foreseeability").

28

DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' RICO CLAIM

1    otherwise each be entitled to recover the full treble damages" from the perpetrators of the

2    scheme.  *Id.* at 273.  The Court held it made little sense to engage in this exercise given that the

3    broker-dealers, as direct victims, could be counted on to sue – and in fact had done so.  *See id.*

4         This same concern predominates here, where the risks of multiple recoveries, and the

5    corresponding need to adopt complex apportionment rules, are threefold.  First, there is the

6    difficulty of allocating damages between the competitors and the customers (the direct victims of

7    the alleged wrongdoing).  Compounding that difficulty is an issue not present in *Holmes*:  how to

8    apportion damages among the Plaintiffs, which compete against each other as well as against

9    other competitors.  *See* FAC, ¶ 30-32 (noting three Plaintiffs serve the "greater San Francisco

10   Bay Area").  Finally, in further contrast to *Holmes*, where all the parties that could have sued had

11   apparently done so, this Court would have to anticipate and account for the possibility that still

12   more customers and competitors could bring separate actions.  The latter two added layers of

13   complexity make the apportionment problems in *Holmes* appear easy by comparison.

14        New factual developments confirm these risks here.  Not only have IKON customers

15   brought their own suits, but 12 other plaintiffs have filed the parallel *Global Services* action.

16   Thus, the Court faces the daunting prospect of allocating damages among 17 competitors in two

17   separate cases while accounting for the two customer lawsuits, numerous other customer

18   settlements, and the possibility of further customer or competitor suits.  Here, as in *Holmes*, such

19   complicated proceedings "would more probably . . . hobble[] than help[]" RICO's remedial

20   purpose by undermining the effectiveness of treble-damages suits.  *Holmes*, 503 U.S. at 274.

21   There is no reason to "broaden the universe of actionable harms" to include competitors when

22   adjudicating customer claims alone would vindicate the law while presenting a "relatively

23   straightforward" damages calculation.  *Anza*, 547 U.S. at 460.

24   **IV.   CONCLUSION**

25        For all of the above reasons, Plaintiffs' RICO claim should be dismissed.

26

27

28

DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' RICO CLAIM

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED:  March 10, 2011

BINGHAM McCUTCHEN LLP


By:_____/s/_____
          Holly A. House
          Attorneys for Defendant IKON


MUNGER, TOLLES & OLSON LLP


By:_____/s/_____
          Joseph D. Lee
          Attorneys for Defendant GECC

DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' RICO CLAIM